**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

DEMARCO T. THOMAS,              :
AIS 211109,
                               :

      Petitioner,
                               :

vs.                                              CA 09-0047-CG-C
                               :

J.C. GILES,
                               :

      Respondent.

## <u>REPORT AND RECOMMENDATION</u>

Demarco T. Thomas, a state prisoner presently in the custody of the

respondent, has petitioned this Court for federal habeas corpus relief pursuant

to 28 U.S.C. § 2254. On October 3, 2005, Thomas was convicted of first-

degree robbery in the Circuit Court of Baldwin County, Alabama. Petitioner

was sentenced to life imprisonment in accordance with Alabama's Habitual

Felony Offender Statute on December 21, 2005. Thomas' conviction and

sentence were affirmed on appeal by the Alabama Court of Criminal Appeals

on June 16, 2006, by unpublished memorandum opinion. *Thomas v. State*, 978

So.2d 81 (Ala.Crim.App. 2006) (table). Petitioner did not file an application

for rehearing; therefore, the certificate of final judgment of affirmance was

issued on July 6, 2006. Thomas filed a Rule 32 petition in the Circuit Court of

Baldwin County, Alabama collaterally attacking his conviction and sentence on December 11, 2006. The trial court denied the petition on April 17, 2007 and, as well, denied petitioner's motion for reconsideration on June 27, 2007. Thomas did not appeal the denial of his first Rule 32 petition; instead, on October 3, 2007, he filed another Rule 32 petition in the Circuit Court of Baldwin County, Alabama collaterally attacking his conviction and sentence. On December 6, 2007, the trial court denied the petition as successive. On October 17, 2008, the Alabama Court of Criminal Appeals affirmed the denial of Thomas' second Rule 32 petition by unpublished memorandum opinion. Petitioner did not file an application for rehearing and, therefore, the Alabama Court of Criminal Appeals issued its certificate of final judgment of affirmance on December 24, 2008.

In his petition before this Court, filed January 14, 2009 (*see* Doc. 1, at 7), Thomas raises the following grounds which he claims entitle him to relief:

(1) he is actually innocent of the first-degree robbery for which he was tried and convicted;

(2) the trial court's jury instructions created a fatal variance;

(3) trial counsel was ineffective in failing to preserve for appeal (or motion for new trial) objections to the trial court's jury instructions regarding

aiding and abetting and complicity; and

(4) appellate counsel was ineffective in filing a "no-merit" brief on appeal.

After initially asserting the contrary (*see* Doc. 11, at 6-10), the respondent has now admitted that the instant petition has been timely filed (Doc. 14, at 5). Respondent does claim, however, that this Court is procedurally barred from reaching the merits of all of Thomas' claims, save for his claim of actual innocence. This case is ripe for a decision by this Court.

This cause is before the Court on the petition, respondent's answer, as amended, with attachments, and petitioner's replies. A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required.

## **FINDINGS OF FACT**

1.      Thomas was convicted of first-degree robbery in the Circuit Court of Baldwin County, Alabama on October 3, 2005. (*See* Doc. 11, Exhibit 5B, at 1) On December 21, 2005, petitioner was sentenced to life imprisonment in accordance with Alabama's Habitual Felony Offender Statute. (*Id.*) Thomas' conviction and sentence were affirmed on direct appeal

by unpublished memorandum opinion dated June 16, 2006. (Doc. 11, Exhibit

2)

Thomas's appointed counsel has filed a "no-merit" brief in substantial compliance with Anders v. California, 386 U.S. 738 (1967), in which counsel concluded that the accomplice's testimony was corroborated so as to render the evidence sufficient to support Thomas's conviction and that Thomas's sentence was within the statutory range of punishment. Counsel further stated that he had thoroughly reviewed the record and found no viable issues to present to this Court on appeal.

This Court issued an Anders order on April 3, 2006. In response, Thomas has presented this Court with the following issues for review on appeal: (1) that the trial court erred in denying his motion for a judgment of acquittal because, he says, the State failed to present any evidence to corroborate the testimony of his alleged accomplice; and (2) that the trial court erred in refusing to instruct the jury on second-degree robbery as a lesser-included offense of first-degree robbery.

I.

With regard [to] Thomas's challenge to the sufficiency of the evidence and his claim that his alleged accomplice's testimony was not corroborated to connect him to the commission of the offense, the record shows otherwise.

In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt. When there is legal

4

evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision. The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.

Jomedgar Drake, the man sitting in the backseat of Thomas's car, testified at trial pursuant to an agreement with the State. Drake testified that he was married to Thomas's sister and that Thomas had called him earlier on the day of the robbery and invited him to a party. According to Drake, Thomas picked him up in Thomas's girlfriend Joyce's car. Drake stated that they went and picked up Thomas's cousin Ralph Perry and drove to Fairhope. Drake stated that Thomas's cellular phone rang and Thomas spoke to somebody briefly, making comments like "'for real, baby,' and 'Don't be playing with me,' and 'All right then.'" According to Drake, Thomas hung up and then told them the telephone call was from his girlfriend, that she worked at Wendy's in Fairhope, and that they had approximately five or ten thousand dollars at the restaurant. Drake stated that Thomas told them that his girlfriend was going to have the back door already open when they arrived; he stated that Thomas drove to a nearby area and told them that he would wait for them there. According to Drake, Perry then produced a gun, which he recognized to be a bb gun. Drake stated that Joyce called several more times, and that after the final call, which he characterized as a signal, Thomas said that it was time and instructed them to enter the restaurant. According to Drake, after he and Perry committed the robbery, they ran back to where Thomas was waiting, got into the car, and fled. Drake stated that when they saw the police lights, Thomas told them to say that some unknown men passed them on the highway and threw the money into the automobile and then sped away. Drake testified that he initially stuck with the story, but told police the following day about the details of the offense. He stated that he showed officers where Thomas had thrown the gun out of the car; he

identified the bb gun at trial as the weapon used to commit the robbery.

> [] [Section] 12-21-222, Ala. Code 1975, provides:

> > A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.

We note further that [t]he test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense. Additionally, it is not necessary that the corroborative evidence be strong enough or sufficient in itself to constitute proof beyond a reasonable doubt. Rather, as this Court [has] stated[,] . . . corroboration need only be slight to suffice.

Looking beyond the testimony of Drake, Thomas's alleged accomplice, the restaurant manager testified that Joyce, one of the restaurant employees, had just let another employee leave through the back door and had supposedly locked the back door after letting the second employee leave. The manager testified that a few minutes later she observed two men standing behind the counter wearing bandanas over their faces. According to the manager, the men told them it was a robbery and then one of the men pulled out a gun and pulled her down to the ground. She stated that they then pulled her back to her feet and demanded that she open the safe or that they would shoot her. She further testified that she complied and the men took all of the money out of the safe and fled through the back door, at which time she telephoned the police.

6

A police officer responding to the report of an armed robbery at the Wendy's Restaurant testified that he observed a vehicle occupied by three males approximately one mile from the restaurant traveling at approximately 90 miles per hour away from the restaurant shortly after the robbery was reported to the police. The officer initiated a traffic stop on the vehicle. The officer testified that, although Thomas, whom he identified as the driver, appeared calm, the passenger sitting in the front seat was nervous and sweating. The officer also testified that he observed cash in the passenger's lap and a red bandana next to his leg. After asking the occupants of the vehicle to step out of the car for a protective pat-down search, the officer discovered a bank bag. The passenger who was sitting in the back seat of the vehicle began to flee, but stopped and was taken into custody when another officer who had arrived at the scene fired his pistol into the ground.

The two passengers from Thomas's automobile were taken back to the restaurant where the restaurant manager identified the bank bag, a bandana, and the two men as the men who had committed the robbery. She stated that Thomas was not one of the men brought in by officers for her to identify, nor had she previously seen Thomas, who she understood to be Joyce's boyfriend. The restaurant manager identified the gun at trial as the weapon used during the robbery. An officer testified at trial that a second employee, Joyce Thomas, informed officers that she had not gotten a clear enough view of the robbers to identify either man.

The evidence further indicated that Thomas gave a statement to police claiming that he had gone to the Wendy's Restaurant at midnight to pick up his girlfriend, Joyce Thomas, when she got off of work. Thomas also told the officers that when he arrived, two men who he did not know ran out of the restaurant, jumped into his automobile, and ordered him to drive away; and that one of the men had something in his shirt.

Clearly, this evidence was sufficient to corroborate

7

Drake's testimony, and the State's evidence was sufficient to prove a prima facie case of first-degree robbery against Thomas. Therefore, Thomas is not entitled to any relief on this case.

## II.

With regard to Thomas's second pro se argument, the trial court's refusal to instruct the jury on second-degree robbery did not amount to reversible error.

In Ex parte Hannah, 527 So.2d 675 (Ala. 1988), the Alabama Supreme Court discussed when a defendant charged with first-degree robbery is entitled to have the jury charged on lesser included offenses, stating:

> A crime is a lesser included offense where it is established by proof of the same facts, or fewer then all the facts, required to establish the commission of the offense charged. Where two persons commit an armed robbery, robbery in the second degree is a lesser included offense of robbery in the first degree. This is true because in the situation where two persons commit armed robbery, robbery in the second degree can be established by proof of fewer than all the facts required to establish robbery in the first degree. Therefore, we must determine whether the appellant was entitled to a charge on the lesser offense. Someone charged with a greater offense is not always entitled to a charge of a lesser included offense.
>
> > An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his

position. A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.

The trial court was not required to give a lesser-included charge in the present case if there was no evidence tending to bring the offense within the definition of the lesser included offense.

In Ex parte Hannah, the Supreme Court determined that the appellant was not entitled to a charge on second-degree robbery as a lesser included offense because the evidence established both intent and knowledge that his accomplice was armed with a gun during the commission of the robbery, noting:

In order for the petitioner to be convicted of robbery in the second degree, there must be evidence that the robbery was committed by two or more persons and that he did not have an intent to commit the armed robbery or knowledge that an accomplice was going to do so. No evidence was presented that would indicate that the petitioner was guilty of robbery in the second

9

degree.

Based on Ex parte Hannah, Thomas would have been entitled to an instruction on second-degree robbery if there was any evidence from which the jury could have concluded that Thomas participated in the robbery but lacked the intent to commit an armed robbery or had no knowledge that anyone else in the car was going to do so. However, Thomas did not admit [to] participating in the robbery. Indeed, he categorically denied that he knew anything about, or participated in, the robbery. Thomas's denial of knowing about or participating in the robbery was refuted by the State's evidence, which established that Thomas essentially orchestrated the robbery and, further, that he observed the weapon that was used to commit the robbery. Thus, based on the evidence, Thomas was either guilty of first-degree robbery or not guilty of any crime at all. Because the evidence did not support a charge of second-degree robbery, the trial court correctly refused to instruct the jury on that offense.

Thomas's pro se issues are without merit. Further, we have reviewed the record and found no preserved issue warranting reversal of the trial court's judgment. For these reasons, the judgment of the trial court is affirmed.

(Doc. 11, Respondent's Exhibit 2, MEMORANDUM, at 1-7 (emphasis in original; internal footnote, quotation marks, and most internal citations omitted)) Thomas did not seek rehearing and, therefore, the certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on July 6, 2006. (Doc. 11, Exhibit 3)

2. Thomas filed a Rule 32 petition in the Circuit Court of Baldwin County, Alabama, collaterally attacking his conviction and sentence on

December 11, 2006. (*See* Doc. 15, Supplemental Exhibit A, at 1) In this petition, Thomas alleged that the trial court erred in charging the jury on aiding and abetting and that his trial attorney was ineffective in failing to object to the foregoing jury instructions. (*See id.* at 2-5) The trial court denied this petition on April 17, 2007 and the request for reconsideration on June 27, 2007. (*See* Doc. 14, Supplemental Exhibit B, Case Action Summary Sheet) Instead of appealing the denial of the Rule 32 petition, Thomas filed another Rule 32 petition in the Circuit Court of Baldwin County on October 3, 2007. (Doc. 11, Respondent's Exhibit 4, at 3 & 5)[1] This petition was denied by the trial court, by docket sheet entry on December 6, 2007, on the basis that it was a successive petition and properly denied in accordance with Alabama Rule of Criminal Procedure 32.2(b). (Doc. 11, Exhibit 4, Case Action Summary Sheet) The Alabama Court of Criminal Appeals affirmed the trial court's denial of Thomas' second Rule 32 petition by unpublished memorandum opinion released on October 17, 2008. (Doc. 11, Exhibit 5B)

---

[1]     In this petition, petitioner raised the following claims: (1) trial counsel rendered ineffective assistance by failing to conduct pretrial discovery, preserve issues for appeal, etc.; (2) appellate counsel provided ineffective assistance by not meeting with him and by filing a "no-merit" brief on appeal; (3) the trial court created a fatal variance; and (4) the trial court lacked jurisdiction pursuant to Rule 32.1(b). (*See* Doc. 11, Respondent's Exhibit 4, Petitioner's Brief)

The instant Rule 32 petition, Thomas's second, was filed on September 25, 2007. In the petition, Thomas raised the following claims:

> (1) He was denied the effective assistance of counsel at trial;

> (2) He was denied the effective assistance of counsel on appeal;

> (3) The circuit court created a fatal variance between the indictment and the evidence presented at trial when it charged the jury on aiding and abetting; and,

> (4) The circuit court was without jurisdiction to render the judgment or to impose the sentence because the indictment failed to allege an essential element of the offense charged.

The State filed a motion to dismiss, asserting that Thomas's petition was insufficiently pleaded and precluded by Rule 32.2(a), Ala.R.Crim.P., because his claims were either raised on appeal or could have been, but were not, raised and addressed at trial or on appeal, and by Rule 32.2(b), as a successive petition. The circuit court issued an order denying the petition by ruling that the petition was successive and thus precluded by Rule 32.2(b).

On appeal, Thomas reiterates his defective indictment claims. We note that Thomas's ineffective assistance of counsel allegations were not pursued in his brief on appeal. Therefore, these claims are deemed abandoned and will not be considered.

Although couched in jurisdictional terms, Thomas's claims (3) and (4), as set out above, are not truly jurisdictional and therefore subject to the procedural bars of Rule 32, Ala.R.Crim.P. Thus, these claims are, as the State pleaded,

procedurally barred by Rules 32.2(a)(3) and (5) (claims that could have been raised at trial and on appeal), and as the circuit court concluded, precluded by Rule 32.2(b), because this is a successive petition and Thomas has failed to show that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice. Summary disposition was therefore appropriate.

For the foregoing reasons, the judgment of the circuit court is due to be affirmed.

(*Id.* (internal citations omitted)) The certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on December 24, 2008. (Doc. 11, Exhibit 5C)

3.      Thomas filed his federal habeas corpus challenge collaterally attacking his conviction and sentence on or about January 14, 2009. (*See* Doc. 1, at 7)

4.      While the respondent initially took the position that Thomas filed his habeas petition beyond the one-year statute of limitations set forth in 28 U.S.C. § 2244(d) (Doc. 11, at 6-10), it is now clear that the present petition was timely filed (*see* Doc. 15, at 5 ("It appears that Thomas's petition is timely filed within the . . . one-year limitation period under Title 28 U.S.C. Section 2244(d)(1).")). In his supplemental answer, the respondent presses the argument that this Court is procedurally barred from reaching the merits of

petitioner's claims, save his actual innocence claim, because he failed to fully

exhaust same in the state courts of Alabama. (*See id*. at 6-8)

     5.    In response to this Court's procedural default order (Doc. 16),

petitioner argues, in relevant part, as follows:

> The reasons Thomas disagree[s] is for one the court abuse[d] [its] discretion towards him [by] permitting allegations never[] contemplated from beginning as elements of first degree robbery[,] . . . where court abused discretion and added complicity acts as elements during jury instruction[s.] [R]eason two, Thomas's trial counsel gave him this logic by objecting to state's recommended instructions that this couldn't be done without proper[] proceedings. [] [R]eason three, appellant (sic) counsel was ineffective because he never[] raise[d] these issues. [R]eason four, petitioner also contends that he is "Actual[ly] Innocen[t]" of the crime charged because he for one wasn't never[] even present nor did he commit this crime.

> .    .    .

> The reasons Thomas argue[]s that he's actually innocent of the crime charged is because (1) he was never[] present nor on the scene when this crime occurred, (2) Store manager of restaurant testified that neither of the two suspects where (sic) Thomas, [(3)] accomplice J. Drake testified that Thomas was at Autumn Dale apartment[]s when crime occurred.

(Doc. 18, at 2 & 4)

## CONCLUSIONS OF LAW

     1.    In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115

L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a

question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom*. *Alderman v. Thomas*, 513 U.S.1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment

rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

2.      The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

3.      An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id*. at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.   (citations omitted)   This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.      .      .

16

>[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted)   In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.    The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

4.    In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"  *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review

17

unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.").  In all other cases, the presumption is not applicable.  *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559.  In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts.  *Id*. at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  Moreover, the presumption "looks through" unexplained orders to the last reasoned decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.  Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the

18

merits.

501 U.S. at 803, 111 S.Ct. at 2594.  Also, the presumption "may not be applied
in cases in which the state court opinion did not, at a minimum, discuss the
federal grounds at issue." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993)
("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the
state court issued an opinion, it would have ignored its own procedural rules
and reached the merits of this case. In fact, the most reasonable assumption is
that had the state court ruled, it would have enforced the procedural bar.").
Finally, "where a state court has ruled in the alternative, addressing both the
independent state procedural ground and the merits of the federal claim, the
federal court should apply the state procedural bar and decline to reach the
merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

5.    When a petitioner has procedurally defaulted a claim, a federal
court is barred from reaching the merits of that claim unless the petitioner "can
demonstrate cause for the default and actual prejudice as a result of the alleged
violation of federal law, or demonstrate that failure to consider the claim[] will
result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at
750, 111 S.Ct. at 2565.  The cause and prejudice standard applies "uniformly
to all independent and adequate state procedural defaults." *Id.* at 750-751, 111

S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted).  Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel."  (citation omitted).    In  addition,  constitutionally "[i]neffective assistance of counsel . . . is cause." (citation omitted).    Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.  (citation omitted).  Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains."  (citation omitted).

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default.  These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.  We have described this class of cases as implicating a fundamental miscarriage of justice.  (citation omitted).

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d

517 (1991).

> 6.    In his supplemental answer, respondent asserts that claims two

20

through four raised by Thomas in the instant petition are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[I]n order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state.") due to petitioner's failure to exhaust those claims fully in Alabama's appellate courts (*see* Doc. 15, at 6-8).

7.    It is clear to the undersigned that Thomas has procedurally defaulted all claims raised by petitioner herein, save for his claim of actual innocence, for the reason previously identified. More specifically, on direct review, petitioner did not timely seek rehearing in the Alabama Court of Criminal Appeals nor did he seek discretionary review in the Alabama Supreme Court via a petition for writ of certiorari. In addition, and more importantly, petitioner did not appeal the denial of his first Rule 32 petition to Alabama's appellate courts and, therefore, did not exhaust his claims asserted therein and, with respect to his second Rule 32 petition, he failed not only to seek rehearing in the Alabama Court of Criminal Appeals but, as well, he did not seek discretionary review in the Alabama Supreme Court via a petition for writ of certiorari. *See Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001)

("[T]here is no doubt that Alabama's discretionary review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002). Thus, this Court is procedurally defaulted from reaching the merits of these claims pursuant to *Boerckel, supra,* 526 U.S. at 848, 119 S.Ct. at 1734 (a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has not properly presented unless claims and, therefore, has procedurally defaulted same), unless petitioner can establish that the cause and prejudice or fundamental miscarriage of justice exception apply, *Smith, supra*, 256 F.3d at 1138.

        8.      Petitioner has made no attempt to establish cause and prejudice, arguing only that he is actually innocent of the first-degree robbery for which he was convicted (*see* Doc. 18),[2] and therefore, it is found that the cause and prejudice exception to the procedural default doctrine is not applicable in this case. *See Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no

---

[2]      While petitioner, in a conclusory manner, alleges that he can establish cause and prejudice (Doc. 18, at 1), all he does is reiterated the claims he wishes this Court to consider on the merits (*id*. at 2). In other words, Thomas does not address why he failed to completely exhaust all of his claims in the state courts of Alabama. Therefore, he is not entitled to a merits-review of these claims.

analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Tower v. Phillips*, *supra*, 7 F.3d at 211 (court addressed only the single cause argument proffered by the petitioner).

9.     The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).   That standard requires Thomas to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 496, 106 S.Ct. at 2649-2650.  To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Thomas has not come forward with any new reliable evidence not presented at trial which establishes his actual innocence

and thereby undermines the jury's determination that he was guilty of the first-degree robbery of the Wendy's restaurant in Fairhope, Alabama.[3] Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

## **CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for habeas corpus relief should be denied.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation

---

[3]     Stated differently, viewing all of the evidence presented at Thomas' trial in the light most favorable to the prosecution, the undersigned is of the opinion that any rational trier of fact could have found the essential elements of first-degree robbery beyond a reasonable doubt and, therefore, the facts of this case do not support a conclusion that there will be a fundamental miscarriage of justice if this Court does not consider the federal claim raised in all grounds of the petition. *See Murray v. Carrier, supra*, 477 U.S. at 496, 106 S.Ct. at 2649. Petitioner's allegation that "accomplice J. Drake testified that Thomas was at" the Autumn Dale apartments when the crime occurred begs the question because if Drake was robbing the Wendy's, a fact with which noone takes issue, it would be impossible for Drake to know that Thomas was at this apartment complex. Drake, of course, did not testify in this manner.  Rather, Drake testified that Thomas planned the robbery and convinced him, and another guy named Perry, to carry out same with an assist from petitioner's girlfriend, Joyce Thomas, a Wendy's employee, who left the backdoor of the restaurant open for the robbers. While Drake and Perry robbed the Wendy's, Thomas waited in a getaway vehicle, the same vehicle which police stopped not far from the site of the robbery and in which was discovered Thomas, Drake and Perry, along with proceeds from the robbery.

of the Magistrate Judge.

**DONE** this the 1st day of July, 2009.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.       *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.